Marionneaux et als. vs. Testamentary Executor et als.

No. 11,795.

CALVIN W. MARIONNEAUX ET ALS. VS. VALLIERE P. DUPUY, TESTA-
MENTARY EXECUTOR ET ALS.

Natural children who claiming to have been legitimated by their father, and thereby made his forced heirs, brought suit to have his will set aside so far as it affected their *legitime*, are not estopped from bringing the action by reason of their having accepted delivery from the testamentary executor of property specially bequeathed them, and having granted the executor a discharge from all liability to them on account of that particular property in an act wherein the existence of the will and its probate is referred to, when they were not parties to. the probate proceedings, and knew nothing of the other provisions of the will.   There is no inconsistency in a father in the exercise of his power of disposition over the disposal portion of his estate making special legacies and leaving the *legitime* intact.   The heirs would have the right to assume that such was the case.

Where a natural father in a notarial act in which he acknowledged certain persons as his children, declared that in so doing, it was his intention to " legitimate " them, proceeds at once before the same notary and the same witnesses to make his will, in which he makes special legacies to these children, referring to them as his " acknowledged children," and after having done so, divides the residue of his estate into twelve parts and bequeaths each of the parts to certain nephews and neices, who are mentioned as his heirs; the two acts may be read together as a continuing single transaction, with a view of ascertaining in what sense the word "legitime" was used, it being susceptible of two meanings.

Behind the question of legitimation *vel non*, lies the question whether by legitimation by notarial act, natural children become " forced heirs " of the father. *

A PPEAL from the Fourteenth Judicial District Court for the
Parish of Iberville.   *Talbot, J.*

*Guy Hebert* and *George B. N. Wailes* for Plaintiffs, Appellants.

*Samuel Matthews* and *Sims & Gondran* for Defendants, Appellees.

Submitted on Briefs, May 10, 1895.
Opinion handed down, May 20, 1895.

The opinion of the court was delivered by
NICHOLLS, C. J.   The present suit was instituted by Henry Dona,

* The  court does not decide this point.  As the cause is remanded the atten-
tion of the parties is called to this question.—REPORTER.

Mary, Lena, Louis and Clementine Marionneaux. Plaintiffs allege that they are the children and heirs of Silvert Marionneaux; that on the 30th of August, 1893, their father legitimated them in the manner required by law by an an act passed before Louis Lozano, notary public. That subsequently, on the same day, he executed his last will and testament by public act, in the nuncupative form, before the said notary; that by said will the testator bequeathed to each of the petitioners one town lot each in the town of Plaquemine; said lots being of no very great value, the whole amounting, as shown by the inventory, to ten thousand, nine hundred dollars, whereas the entire active mass of the succession was appraised at the sum of forty-five thousand one hundred and nine dollars and ninet -nine cents.

That by said will the the testator bequeathed to his nephews and neices, and the children of his nephews and neices, all the rest and residue of his property, with the exception of a legacy in favor of Emma Madison of three thousand dollars, and that said dispositions are largely in excess of the disposable portion which the testator was authorized by law to will to other persons than to petitioners, his legitimated children and force heirs. That the said testator could only dispose to the prejudice of petitioners and their co-heirs and other legitimated children, not parties to this suit, of one-third of all the property of which he died possessed. That he appointed Valiere Dupuy his testamentary executor, at whose request the will had been probated; that they were not parties to the proceedings by which said will was admitted to probate, and were not cited nor notified to attend the same, as the law requires, to be present in order that they might object if they saw fit to said proceedings, and listen to the decree of court by which said will was ordered to be probated, registered and executed according to law and its tenor, and that all of said proceedings, in so far as they are concerned, are null and void, and can have no legal effect upon their rights and interests. That subsequently they were requested by the executor and the clerk of court *ex officio* notary public to appear in the office of the latter and to sign papers prepared without consultation with petitioners, and without any previous knowledge on their part of the contents of said papers, and without having given them an opportunity to consult counsel or gather information as to the purport and scope and object of the same, and they were told then and there to sign the same; that being ignorant of the law and the facts by which

FORTY-SEVENTH ANNUAL· REPORTS, 1895.    945

Marionneaux et als. vs. Testamentary Executor et als.

their rights were governed, and especially ignorant of their legitima-
tion by their father, they signed said papers. That the notary
and the executor were both aware of the fact that petitioners
had been legitimated by their ancestor, as above set forth, but
concealed purposely all knowledge of said legitimation from peti-
tioners and insisted upon their signing the papers immediately upon
their being produced and read to them. That the hasty manner in
which they were called upon to sign, without previous knowledge of
the contents of said papers, without opportunity given to them to
consult counsel, and the failure to cite petitions to be present at the
probate of said will, and the other acts mentioned, operated as a
fraud upon their rights, and that by reason of said fraud and of their
ignorance in regard to law and facts, they were not bound by their
signatures, and the acts which they signed, being the acts by which
they accepted delivery from the executor of the lots respectively
bequeathed to them in said last will, are absolutely null and void.
That if not null and void they can have no other effect than to re-
duce the portion of their *legitime*, so that together with said legacies
it will amount to the sum of which they cannot be deprived, and for
which they are forced heirs. They prayed for citation upon the
various parties in interest; that after due proceedings the various
acts by which they are made to appear as accepting the legacies of
the town lots, be declared absolutely null and void in so far as they
affect their rights; that the probate of the will be set aside, and
that the same be ordered to be executed according to the decree to
be rendered in the present case and according to law; that judgment
be rendered in their favor, decreeing them to be owners of the one
undivided two-thirds of all the property belonging to the succession
of Silvert Marionneaux, and that all the legacies made to other
parties in the will be reduced to the disposable portion, and that pe-
titioners be placed in possession of said property upon paying the
debts against it.

The executor excepted that on the face of the petition and the
documents annexed thereto, plaintiffs showed no right of action in
law to maintain the prayer in their petition, which is prohibited by
the law of Louisiana. The court overruled this exception. The de-
fendants then excepted to plaintiffs' demand on the ground that on
the face of the petition and the documents thereto annexed, and
made part thereof, they had each and all of them, in public and au-

thentic form, affirmed and voluntarily executed the will of Francis Silvert Marionneaux, and all donations made therein to them, after his decease, and had thereby renounced all right to oppose either defects of form or any other exception to said will. They prayed that the demand of plaintiffs be rejected, and their suit dismissed. The court sustained this exception, rejected plaintiffs' demand, and dismissed their suit, and they appealed.

The exception was tried on the face of the papers. In our opinion it should have been overruled. Plaintiffs' allegations as to fraud and error could not be ignored by the court; they had to be taken as true for the purposes of the exception, and if they were true there was clearly no estoppel in the case. Independently of plaintiffs' pleadings however, we think the exception of estoppel was not well founded. Assuming, for the time being, plaintiffs' position that they are the legitimate children and forced heirs of Silvert Marionneaux is well founded (and we are bound to do so as matters stand), we would see nothing in the simple fact that they had accepted delivery of the particular objects specially bequeathed to them from the executor, and given him an acquittance for all liability to themselves on account of that precise property, which would cut them off from making available their rights as forced heirs which they hold from the law. It is not pretended that these plaintiffs had been made parties to the proceedings in the matter of the probate of the will—that they had any knowledge of its provisions or their rights in the premises. The executor has never filed an account and he has never been discharged. It is true that when the plaintiffs accepted delivery of the particular property bequeathed to them, they were informed that Silvert Marionneaux had made a will —that in that will this particular property had been left them as a legacy, and that the will had been ordered to be probated according to its tenor; but the information thus conveyed to them would, at the furthest, have only the effect of committing them to the validity of the will as to form and to an acceptance of the particular property which had been left them, with such incidental obligations, perhaps, in regard to it, as might spring from that acceptance.

There is no inconsistency whatever in a father in the exercise of his power over the disposable portion of his estate, leaving special articles to particular forced heirs, and leaving unaffected and untrammelled the *legitime* belonging to the heirs. A forced heir re-

ceiving delivery of an object, specially bequeathed, would have the right to assume that such in fact was the case. The attention of the plaintiffs was nowhere called to the fact that Marionneaux' nephews and nieces had been by him instituted his heirs in the same testament in which they had been given special legacies, and we see no possible ground upon which those parties could predicate a claim of estoppel. Heirs of Burney vs. Ludeling *et als.*, 47 An. 88. Matters stand just as they did when Marionneaux died, except as to the particular objects specially bequeathed; the delivery of these objects did not work injury to anyone, or induce anyone to a change of his position.

We next come to the exception filed by defendants, which was overruled by the court, "that on the face of plaintiff's petition, and the documents annexed thereto, they showed no right of action in law to maintain the prayer of their petition, which is prohibited by the law of Louisiana."

Defendants' proposition is that although in the act recognizing the plaintiffs as his natural children, Marionneaux is made to declare that in so doing it was his intention to "legitimate" them, yet it is obvious from the will made by him at the same time, before the same notary and same witnesses, that that word was not used nor intended to be used by him as giving to them the *status* of legitimate children—that the word is susceptible of another meaning which it is the right and duty of this court to adopt in view of the terms of the will and the evident intention of the testator as expressed therein, which is that it was his intention to vest in them thereby the legal *status* necessary to receive the special bequests therein about to be given to them by him; that the word "legalize," rather than "legitimate," was intended; that the two instruments are to be read together as a continuous whole, and when so read there can be no doubt as to the sense which the word "legitimate" was used.

On the other hand, it is claimed that the word must be taken as giving the children all the benefits resulting from being legitimate children; that the effect followed as the instantaeous legal effect of Marionneaux' declaration, and that he could not by any dispositions of a subsequent will, or by any recitals therein, undo what was already an accomplished fact.

The will in this case, upon its face, would negative the claim advanced by the plaintiffs. It was the clearly expressed intention

of the testator to dispose thereby of his entire estate, and to direct that these plaintiffs should take nothing from it beyond the specific legacies made to them. He distinctly wills that after these special legacies, and his debts should have been paid, that the residue of his estate should be divided into twelve equal parts and pass to his nephews and nieces as indicated in the testament. He refers to these relatives of his as his heirs, while in each of the successive legacies made to the children, he refers as each is made to the particular legatee as being simply "his acknowledged child." There is no questioning the correctness of the position taken that, after a father has legitimated his child, he can not by subsequent will, through the dipositions or recitals therein, undo what he had already done, but the question in this case is precisely whether or not he *had* legitimated them. The premise being granted that he *had* done so, the legal conclusion would follow which plaintiffs contend for. If the two acts had been separated by any length of time, plaintiffs' argument would be very strong, but the two acts are so closely connected in this case as really to form one and the same transaction, and are to be read together. In matters of testamentary dispositions the will of the testator is to be carried out if possible. Where a term which the testator has used is susceptible of two meanings, and it is shown by the testator's contemporaneous acts and conduct that the meaning which would have been accepted, in the absence of such acts and declarations, was not the one intended by him, we think we are authorized to go into the inquiry as to what the testator's real purpose was. It is quite probable in this case that neither the notary nor Marionneaux understood the significance of the word "legitimate." Marionneaux himself clearly did not, so far as this is shown by the instrument on file. We think the whole question as to this point should be left to be disposed of as one of the issues on the merits. As our conclusion necessitates a reversal and remanding of the case, we think it not amiss to call the attention of both parties to the fact that back of the question of "legitimation" of the children lies another, that is what effect the legitimation of natural children by notarial act may or may not have in vesting in them the *status* of "forced heirs." C. C., 200, 214.

For the reaaons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court, sustaining de-

State ex rel. Goldberg vs. Constable.

fendant's second exception and rejecting plaintiffs' demand, and dismissing their suit, be and the same is hereby annulled, avoided and reversed.

It is further ordered that this cause be remanded to the lower court for further proceedings according to law.